<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WESTPARK ELECTRONICS LLC d/b/a ABES OF MAINE and ZOOMSPEED LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>EDEALER LLC and DENNIS KIM OSTERLUND,<br><br>*Defendants*. | Case No. 22cv4327 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiffs Westpark Electronics, LLC ("Westpark Electronics") and Zoomspeed, LLC ("Zoomspeed") (collectively, "Plaintiffs") allege that Defendant EDealer LLC ("EDealer"), at the direction of its owner and manager Defendant Dennis K. Osterlund (collectively, "Defendants"), has been "blatant[ly] pira[ting]" Plaintiffs' trademarks and deceiving consumers in connection with bundles of computer and camera equipment sold on the retail website Amazon.com.  D.E. 1 ("Complaint" or "Compl.") ¶¶ 1, 2, 9.  Osterlund moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  D.E. 30 ("Mot.") at 1. The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1b.  For the reasons below, the Court will **DENY** the motion.

## I.      BACKGROUND[1]

### A.  Westpark Electronics and the AOM Mark

Westpark Electronics sells electronic computer equipment and camera products at a brick-and-mortar store in Linden, New Jersey, and on its website[2] and on the retail website Amazon.com ("Amazon").  Compl. ⁋ 11.  Since 2015, Westpark Electronics has sold bundles of computer and camera equipment on Amazon under the mark AOM ("AOM mark"), which are purchased and arrive as a single package ("AOM bundle").  *Id.* ⁋ 12.  An example of an Amazon listing for an AOM bundle is below.



---

[1] This section derives mainly from the Complaint.  On a motion to dismiss, the Court takes all well-pleaded facts as true.
[2] www.abesofmaine.com.  Compl. ⁋ 11.

*Id.* ⁋ 13.  "Westpark Electronics ensures that all items offered in the [AOM] bundle are genuine products of their respective manufacturers, are new and not used, are not 'gray goods' intended for sale in foreign markets, and are as advertised in the Amazon listings."  *Id.* ⁋ 14.  Consequently, the AOM mark has a reputation for high-quality AOM bundles, and the quantity of sales are significant, "averaging in the millions of dollars in the last few years."  *Id.* ⁋⁋ 15-16.

Westpark Electronics has a pending application to register its AOM mark with the United States Patent and Trademark Office, Serial No. 97/426816.  *Id.* ⁋ 17.

**B.  Zoomspeed and the ZOOMSPEED Mark**

Zoomspeed manufactures and sells computer equipment, including memory cards, various cables, and cleaning cloths.  *Id.* ⁋ 18.  Zoomspeed exclusively sells its products to Westpark Electronics, which then sells the products at retail outlets, including in the AOM bundles sold on Amazon.  *Id.* ⁋ 20.  Since at least 2020, Zoomspeed has designated these products with the mark ZOOMSPEED ("ZOOMSPEED mark").  *Id.* ⁋ 19.  Like the AOM mark, the ZOOMSPEED mark has achieved a reputation for high quality products.  *Id.*

Zoomspeed has a pending application to register its ZOOMSPEED mark with the United States Patent and Trademark Office, Serial No. 97/385932.  *Id.* ⁋ 21.

**C.  Defendants' Amazon Sales**

EDealer, managed and owned by Osterlund, operates on Amazon under the seller name "eDealerTech," which sells electronics and computer products, including "some of the same bundles of computer products as does Westpark Electronics, using the same descriptions[] [and] the same Amazon ASIN number, and listing them under the AOM brand" ("EDealer bundles"). *Id.* ⁋⁋ 22-23.  An example of an EDealer bundle and its product description is below.



*Id.* ¶ 24.

As the example depicts, eDealerTech uses the AOM mark to identify the EDealer bundle

and the ZOOMSPEED mark in the product description to identify two of the cables included in

the EDealer bundle.  Compl. ¶ 24.  However, Westpark Electronics has not made the EDealer

bundles, nor has it had the opportunity to check their quality; rather, the EDealer bundles are "inferior" because, among other reasons, "they include products that are gray goods, intended by the manufacturers to be sold in foreign countries, and which materially differ from the product sold in the United States" and "will not have the manufacturer's warranty honored in the United States . . . ." *Id.* ¶¶ 26-27. Additionally, though the product description states that the ZOOMSPEED mark cables are included in the EDealer bundle, "the actual [EDealer] bundles shipped and sold do not include cables of that brand" or "any cables at all." *Id.* ¶ 28 (emphasis omitted). The EDealer bundles also do not include other items in their product descriptions, such as cleaning cloths. *Id.*

Further, Osterlund, as manager and owner, "authorized and approved all [of the above] wrongful acts . . . ." *Id.* ¶ 9. Additionally, on eDealerTech's Amazon seller profile, Osterlund is listed under the "Detailed Seller Information" as the seller:



**Detailed Seller Information**
Business Name: Dennis Kim Osterlund
Business Address:
    PO BOX 68434
    Portland
    OR
    97268
    US

D.E. 12-4 ("Amazon Profile") at 1-2.  Westpark Electronics placed four orders, or "test buys," of EDealer bundles on Amazon, all four of which were shipped to Linden, New Jersey. *See generally* D.E. 12-7 (containing proof of orders).

On June 29, 2022, Plaintiffs filed suit[3] against EDealer and Osterlund, bringing five claims under federal, state, and common law.  Counts I and II are brought under federal law, alleging unfair competition and false advertising, respectively, under 15 U.S.C. § 1125.  *Id.* ¶¶ 37-49. Counts III and IV are brought under New Jersey law, alleging unfair competition under N.J.S.A. 56:4-1 and consumer fraud under N.J.S.A. 56:8-19, respectively.  *Id.* ¶¶ 50-56.  Lastly, Count V alleges a common law unfair competition claim.  *Id.* ¶¶ 57-59.

On January 31, 2023, Osterlund moved to dismiss the Complaint against him for lack of personal jurisdiction.  Mot. at 1.  Plaintiffs opposed.  *See* D.E. 38 ("Opp'n").  Osterlund has not replied.

## II.    LEGAL STANDARDS

A defendant can move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  When reviewing a motion to dismiss, a court will "accept all of the

---

[3] Prior to filing suit, Plaintiffs made multiple efforts to stop Defendants' conduct.  On November 16, 2021, Plaintiffs messaged Defendants on Amazon and demanded they remove the EDealer bundles listings; Defendants did not respond, but removed the listings.  *Id.* ¶ 32.  Then, in March 2022, Defendants relisted the EDealer bundles on Amazon, and Plaintiffs sent another takedown demand; Defendants again removed the listings.  *Id.* ¶ 33.  And finally, in May 2022, Defendants again relisted the EDealer bundles, and Plaintiffs retained counsel, who sent Defendants a cease-and-desist letter on May 26, 2022; Defendants did not respond.  *Id.* ¶ 34.

plaintiff's allegations as true and construe disputed facts in favor of the plaintiff" to determine whether personal jurisdiction may be exercised. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (internal quotation marks omitted). The plaintiff must "prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). "Since New Jersey's long-arm statute allows the exercise of personal jurisdiction to the fullest limits of due process," the Court will "look to federal law for the interpretation of the limits on in personam jurisdiction." *Malik v. Cabot Oil & Gas Corp.*, 710 Fed. App'x 561, 563 (3d Cir. 2017) (internal quotation marks omitted).

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cali., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). For an individual, "[t]he paradigmatic forum for the exercise of general jurisdiction 'is the individual's domicile[]' . . . ." *Ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (2022) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb*, 582 U.S. at 262 (emphasis in original).

However, "[i]n order for a court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id.* (emphasis in original) (cleaned up). The Third Circuit uses a three-part test to determine if specific jurisdiction exists. First, the threshold requirement for specific jurisdiction is that "the defendant must have purposefully directed [their] activities at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir.

2007) (internal quotation marks omitted). This requires the defendant's "deliberate targeting of the forum." *Id.* "Unilateral activity of those who claim some relationship with a nonresident defendant is insufficient[,] . . . [a]nd contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.* (cleaned up). "[R]andom, isolated, or fortuitous" contacts are insufficient. *Keeton v. Hustler Magazine, Inc.*, 464 U.S. 770, 774 (1984).

If the first requirement is met, then a court may consider, "[s]econd, [whether] the litigation . . . arise[s] out of or relate[s] to at least one of those activities." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted). "And third, [only if] the prior two requirements are met, [then] a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Id.* In making this determination, a court can consider "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in further fundamental substantive social policies.'" *Miller Yacht Sales*, 384 F.3d at 97 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "At its heart, the Court's inquiry is focused on whether it is 'reasonable to require the defendant to defend the suit in the forum state.'" *Telebrands Corp. v. Mopnado*, 2016 WL 368166, at *8 (D.N.J. Jan. 12, 2016) (quoting *Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 746 (D.N.J. 1999)).

## III.   ANALYSIS

Plaintiffs do not argue that the Court can exercise general jurisdiction over Osterlund, whose domicile is in Oregon. *See generally* Opp'n; *see also* Compl. ℙ 9. Accordingly, the Court will only consider whether it can exercise specific jurisdiction over Osterlund. For the reasons below, the Court will exercise specific jurisdiction over Osterlund.

**A.  Osterlund Purposefully Directed Activities at New Jersey**

First, Plaintiffs must show that Osterlund purposefully directed activities at New Jersey. *See O'Connor*, 496 F.3d at 317.  Osterlund argues he "has no connection to New Jersey" because "[h]e is a resident of Oregon[]" and does not [own or] lease any real property within the State of New Jersey, nor does he own any business in New Jersey."  Mot. at 1.  Plaintiffs, however, argue that even so, the Court can exercise jurisdiction over Osterlund because (1) as the owner and manager of EDealer, he controlled, authorized, and approved EDealer's conduct; and (2) his name was listed as the seller on eDealerTech's Amazon Profile, and eDealerTech sold the EDealer bundles.  Opp'n at 13.

Generally, "a court does not have personal jurisdiction over an individual defendant when his only contacts with the forum are made in his corporate capacity." *CMC Food, Inc. v. Mitlitsky Eggs, LLC*, 2019 WL 5206104, at \*6 (D.N.J. Oct. 16, 2019).  However, "it is well settled that '[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort.'" *Id.* (quoting *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)).  "This principle has been expressly recognized to extend to infringement and unfair competition claims." *Id.* (citing *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984)).  As such, if the defendant "is shown to have sold the [complained-of] product in the forum state, the forum may exercise [specific] personal jurisdiction over the defendant." *Batinkoff v. Church & Dwight Co., Inc.*, 2020 WL 1527957, at \*12 (D.N.J. Mar. 31, 2020) (second alteration in original) (internal quotation marks omitted).  "This is so regardless of the quantity of products sold." *Id.* (citing *North Am. Phillips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579-80 (Fed. Cir. 1994)).  The plaintiff must, in addition to allegations in the pleadings, provide evidence that "establish[es]

9

with reasonable particularity the nature and extent" of the alleged contacts. *Id.* (internal quotation marks omitted).

Here, Osterlund argues that "in order for a website[,]" like Amazon, "to constitute sufficient contacts with the forum state[,]" Plaintiffs must show that Osterlund "'directly target[ed] [the] website to the state, knowingly interact[ed] with residents of the forum state via [the] website, or [conducted] sufficient other related contacts.'" Mot. at 4 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)).

The case cited by Osterlund is distinguishable. In *Toys "R" Us*, the Third Circuit was "consider[ing] the standard for personal jurisdiction based upon a defendant's operation of [its own] commercially interactive web site . . . ." 318 F.3d at 451. Here, the EDealer bundles were sold on Amazon, a third-party website. This is distinct because a decision to use third-party services is a "deci[sion] to participate in and profit from a worldwide market"; as such, "a single sale into a state is enough to invoke jurisdiction over a party." *Hayward Indus., Inc. v. Salt Sols., Inc.*, 2022 WL 4377217, at *2 (D.N.J. Sept. 22, 2022); *see also Telebrands Corp.*, 2016 WL 368166, at *7 (internal quotation marks omitted) ("Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it.").

Here, Plaintiffs have alleged that Osterlund, as manager and owner, "authorized and approved" all of the allegedly tortious conduct. Compl. ⁋ 9. As proof, Plaintiffs submit that Osterlund is listed as the seller on eDealerTech's Amazon Profile. *See* Amazon Profile at 1-2. Osterlund does not address his role as manager and owner of EDealer or that his information is on

10

the Amazon Profile.  *See generally* Mot.[4]  Nor does he contest that EDealer bundles have been sold into New Jersey.[5]  *See id.*

Taking these well-pleaded and supported allegations as true, Plaintiffs have sufficiently established that Osterlund purposefully directed activities at New Jersey, thus satisfying the first requirement of the specific jurisdiction analysis.  *See Acteon, Inc. v. Vista Dental Prods.*, 2006 WL 1207999, at *4 (D.N.J. May 3, 2006) (internal quotation marks omitted) (finding jurisdiction where the plaintiff alleged that the corporate officer defendants "were directly involved in directing" the alleged infringement); *Batinkoff*, 2020 WL 1527957, at *12-13 (finding jurisdiction over a corporate executive where the plaintiffs alleged and provided "circumstantial evidence to support a determination that . . . [the corporate executive] purposefully directed his [infringement] activities at New Jersey"); *CMC Food*, 2019 WL 5206104, at *6 (internal quotation marks omitted) (in infringement and unfair competition cases, a court can exercise personal jurisdiction over a corporate officer  "when he is an actual participant in the tort").

**B.  Plaintiffs' Claims Arise Out of and Relate to Osterlund's New Jersey Contacts**

The Court next considers whether "the litigation . . . arise[s] out of or relate[s] to at least one" of the EDealer bundle sales in New Jersey.  *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted).  Osterlund makes no argument concerning this analysis.

As noted above,[6] in infringement and unfair competition cases, "it is enough that [the defendant] sold its product in New Jersey only once" because one sale constitutes tortious conduct, "which is the subject matter of the instant litigation."  *Osteotech, Inc. v. GenSci Regeneration Scis.,*

---

[4] As noted, Osterlund did not reply to Plaintiffs' opposition to his motion.
[5] Plaintiffs have established that four EDealer bundles purchased on Amazon were delivered into New Jersey.  *See* D.E. 12-7.
[6] *Supra* Section III.A.

*Inc.*, 6 F. Supp. 2d 349, 354 (D.N.J. 1998); *see also Telebrands Corp.*, 2016 WL 368166, at *6 (the plaintiffs' claims arose out of the defendant's website-based sales where the "alleged acts serve[d] as the basis for [the p]laintiff's patent, trademark, and common law claims"); *Hayward Indus.*, 2022 WL 437721, at *2 (when the sales "allegedly infringe[d] upon [the p]laintiff's . . . rights, all [of the] claims ar[o]se out of [the d]efendant's activities in New Jersey"); *Batinkoff*, 2020 WL 1527957, at *13 (claims regarding allegedly infringing product arose out of a corporate officer's actions related to the sale of that product).

Here, Plaintiffs' claims arise out of and relate to the sale of the EDealer bundles on Amazon.  Accordingly, the Court finds that the second requirement of the specific jurisdiction analysis is met.

### C. Exercising Jurisdiction Over Osterlund Comports with Standards of Fair Play and Substantial Justice

Lastly, the Court must determine whether exercising jurisdiction over Osterlund "would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 477 (internal quotation marks omitted).  Osterlund bears the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*  Osterlund makes no argument concerning this analysis.

"Courts in this district find jurisdiction proper where [the] plaintiff satisfies the first two prongs of the specific personal jurisdiction analysis[] and the defendant offers no substantive argument concerning the third requirement of fair play and substantial justice." *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 2021 WL 5997986, at *5 (D.N.J. Dec. 20, 2021); *West Coast Life Ins. Co. v. Wells Fargo Bank, N.A.*, 2021 WL 302919, at *7 (D.N.J. Jan. 29, 2021) (same).  Accordingly, the Court finds that jurisdiction is proper, and could end its analysis here.

12

However, the Court additionally finds that jurisdiction would comport with fair play and substantial justice. "At its heart," this analysis "focuse[s] on whether it is 'reasonable to require the defendant to defend the suit in the forum state.'" *Telebrands Corp.*, 2016 WL 368166, at *8 (quoting *Decker*, 49 F. Supp. 2d at 746). Among the factors a court can consider are the burden on the defendant and the forum state's interest in the case. *See Burger King*, 471 U.S. at 477. In infringement and unfair competition cases, because a defendant only needs to sell the complained-of product in a state once, courts find both that a defendant had "'fair warning' it could be haled into court in[] the forum state" and also that "the forum in which . . . [the] product is sold clearly has an interest in prohibiting the importation of infringing articles into its territory." *Osteotech*, 6 F. Supp. 2d at 354; *see also SLP Performance Parts, Inc. v. Suncoast Auto. Performance, Inc.*, 2011 WL 4387186, at *1 (D.N.J. Sept. 20, 2011) (citing *Osteotech*, 6 F. Supp. 2d at 354); *Hayward Indus.*, 2022 WL 4377217, at *3 (finding jurisdiction was fair and reasonable where the defendant sold infringing products into New Jersey).

Here, because Osterlund, through EDealer and eDealerTech, sold the EDealer bundles in New Jersey at least once, it is reasonable to require Osterlund to defend these actions in New Jersey, which has an interest in the alleged tortious conduct. Accordingly, the third requirement for personal jurisdiction is met.

Because all three requirements for personal jurisdiction are met, the Court will exercise personal jurisdiction over Osterlund.

IV.     CONCLUSION

For the reasons set forth above, Osterlund's motion to dismiss for lack of personal jurisdiction (D.E. 30) will be **DENIED**.  An appropriate Order accompanies this Opinion.


Dated: August 17, 2023

_____
Evelyn Padin, U.S.D.J.